Compensation Appeals Board
No. 96-356

## APPEAL OF PATRICIA FOURNIER

## (New Hampshire Compensation Appeals Board)

December 11, 2001

*Gawryl & MacAllister*, of Nashua (*Janine Gawryl* on the brief and orally), for the petitioner.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*James E. Owers* and *Sarah S. Murdough* on the brief, and *Mr. Owers* orally), for the respondent.

NADEAU, J. The petitioner, Patricia Fournier, appeals a decision of the compensation appeals board (CAB) declining to award her an additional ten percent permanent impairment to her right wrist. We reverse and remand.

The record supports the following facts. In 1984, the petitioner fell at work and filed a workers' compensation claim. She was eventually diagnosed with thoracic outlet syndrome on her right side and underwent surgery in 1985 to remove a rib. In 1986, she received a twenty-five percent permanent partial disability award for her right upper extremity.

In May 1992, the petitioner notified her employer, respondent Sedgwick James, Inc., that she had experienced numbness and pain in her hands after working on her computer all day. She had been diagnosed a month earlier with bilateral carpal tunnel syndrome by her treating physician, William J. Kilgus, M.D. The petitioner underwent left carpal tunnel release surgery in May 1994, but did not seek surgery for her right hand.

By decision dated May 2, 1995, a department of labor hearing officer awarded the petitioner a fifteen percent permanent impairment for her left upper extremity, but denied a permanent impairment award for her right side as being premature. The petitioner appealed to the CAB.

On appeal, the CAB awarded a fifteen percent permanent impairment for the left wrist but a zero percent permanent impairment for the right wrist. The petitioner appealed to this court, which, by order, vacated the CAB's decision in part and remanded the case with instructions. Specifically, we ordered:

> The decision below is vacated to the extent that it assigns a permanent impairment award of 0% to the right wrist, and the case is remanded to the compensation appeals board for the limited purpose of issuing a new decision based on the evidence it has before it, *supported by specific findings of fact and rulings of law*, with respect to the impairment award that should be assigned to the right wrist.

We retained jurisdiction of the appeal.

On remand, the CAB awarded the petitioner a ten percent permanent impairment for her right wrist. The CAB found that "the medical condition of the claimant warrants such an award due to the ongoing nature of the claimant's treatment with Dr. Kilgus at the time of the hearing."

The employer moved for reconsideration or clarification, arguing that the CAB failed to address the remanded issue. Specifically, the employer argued that the question on remand was whether the petitioner was entitled to a ten percent permanent impairment *in addition* to the twenty-five percent impairment she had been awarded in 1986, for a total right upper extremity permanent impairment of thirty-five percent.

The CAB denied an additional impairment award, stating that it was "unable to find competent medical evidence to clearly indicate that an additional award of 10% was contemplated and intended to supplement the original 25% awarded in 1986." The petitioner filed a motion for rehearing, which the CAB denied.

We review the CAB's decision under the standard established in RSA chapter 541. *See Appeal of Rockingham County Sheriff's Dep't*, 144 N.H. 194, 196 (1999); RSA 281-A:43, I (c) (Supp. 2000). "Accordingly, we will overturn the board's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the order is unjust or unreasonable." *Appeal of Rockingham*, 144 N.H. at 196 (quotations omitted).

The petitioner raises a number of questions challenging whether the evidence, under proper application of the parties' burdens of production and proof, supports the CAB's decision. The petitioner argues that she made out her *prima facie* case when the only two expert opinions before the board, those of Dr. Kilgus and the employer's expert, Kenneth S. O'Neil, M.D., attributed a ten percent permanent impairment to her right wrist. She argues that the burden of production should then have shifted to the employer to introduce contrary competent medical evidence. The employer, on the other hand, contends that the petitioner never made out a *prima facie* case.

In a letter dated November 22, 1994, Dr. Kilgus briefly outlined his treatment of the petitioner's carpal tunnel syndrome and concluded: "Using the Guide to Permanent Impairment by the American Medical Association, 4th Edition, Table 16, page 57, she has sustained a 20% impairment to the left upper extremity and a 10% impairment to the right upper extremity." Dr. O'Neil, who had performed an independent medical examination of the petitioner, opined:

Her permanent impairment rating based on the 4th Edition of the AMA Guides would be covered under Table 16 of the 4th

Edition. The patient would qualify for a 10% impairment for mild entrapment neuropathy of the median nerve. This would translate to a 10% upper extremity impairment on the right and 10% upper extremity impairment on the left.

The employer contends that nothing in these opinions indicates that the doctors intended the ten percent impairment to be in addition to the twenty-five percent previously awarded. The petitioner argues that the ten percent impairment was intended to be in addition to her prior award because both doctors knew of her prior injury and were asked to opine about the impairment related to her carpal tunnel syndrome only. The petitioner cites a letter from the employer's counsel to Dr. O'Neil forwarding the petitioner's medical records and stating: "Ms. Fournier does seem to have a history of extremity problems dating back over ten years. I am particularly interested only in that permanency which may relate specifically to the injury which she claims to have incurred around May 1992 when she began to develop carpal tunnel like symptoms."

The petitioner also contends that the doctors' opinions could have been clarified by the AMA GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (4th ed. 1993) (GUIDES), which she claims the CAB refused to consider. The petitioner argues that the GUIDES should have been consulted because their use is required by administrative rule and both doctors referenced them in their opinions. *See* N.H. ADMIN. RULES, Lab 508.01(d).

The employer argues that the CAB properly refused to accept the GUIDES because our remand order did not contemplate considering new evidence. In addition, the employer notes that the doctors' opinions reference only a single table from the GUIDES and do not indicate that they used the section relied upon by the petitioner. Finally, the employer argues that the panel could not review the GUIDES on its own, but rather required competent medical expert testimony to explain the GUIDES' use.

We disagree with the employer's characterization of the GUIDES as "evidence," and conclude that the CAB could have properly considered the GUIDES because their use is required by administrative rule, as authorized by statute. *See* N.H. ADMIN. RULES, Lab 508.01(d); RSA 281-A:32, XIV (Supp. 2000). We therefore examine the GUIDES to evaluate the legal sufficiency of a doctor's permanent impairment assessment. *See Appeal of Rainville*, 143 N.H. 624, 631 (1999).

The petitioner contends that because the GUIDES instruct doctors evaluating a current impairment to subtract any previous impairment, Doctors Kilgus and O'Neil must have subtracted the prior twenty-five

percent impairment in arriving at the ten percent impairment assessment related to the carpal tunnel syndrome. We disagree. The GUIDES do not instruct doctors, as a matter of course, to subtract a previous impairment. They require such a procedure if "apportionment" of an impairment is necessary. GUIDES at 2/10. "Apportionment" is a term of art in the GUIDES which is defined as "an estimate of the degree to which each of various occupational or nonoccupational factors may have caused or contributed to a particular impairment." *Id.* at 315. Thus, apportionment would be appropriate if, for instance, the petitioner had had a previous carpal tunnel injury caused by something other than her work for the employer.

The petitioner herself, however, insists that the previous twenty-five percent impairment award and the ten percent impairment award she now seeks relate to separate injuries to different portions of her right upper extremity; namely, an injury to her neck and shoulder in 1984 and an injury to her wrist in 1992. Where different portions of the same upper extremity are affected, the GUIDES instruct that "the hand, wrist, elbow, and shoulder impairments are *combined* using the Combined Values Chart ... to determine the total upper extremity impairment," which is then "converted to a whole-person impairment using Table 3." *Id.* at 3/15; *see also id.* at 3/24.

The record before us indicates that both Dr. Kilgus and Dr. O'Neil assessed only the upper extremity impairment due to the petitioner's carpal tunnel syndrome. Specifically, both doctors stated that their assessment was taken from Table 16 on page 3/57 of the GUIDES, which estimates upper extremity impairment due to entrapment neuropathy. *See id.* at 3/56-3/57. Neither doctor purported to assess an impairment rating for any other condition.

■ As the foregoing indicates, however, this conclusion does not mean that the petitioner is entitled to an *additional* ten percent upper extremity impairment award, for a total award of thirty-five percent. Rather, the petitioner's upper extremity impairments would be combined according to the Combined Values Chart in the GUIDES. *See id.* at 2/8. Using the Combined Values Chart, a twenty-five percent shoulder impairment combined with a ten percent entrapment neuropathy impairment would result in a total upper extremity impairment of thirty-three percent. *See id.* at 322. Thus, we conclude that the additional upper extremity impairment attributable to the petitioner's carpal tunnel syndrome is thirty-three percent minus twenty-five percent, or eight percent. Since RSA 281-A:32, IX directs the award to be calculated according to the percent of whole person impairment, the petitioner is entitled to a five

percent whole person impairment in accordance with Table 3 at page 3/20 of the GUIDES.

We therefore reverse and remand to the CAB for an award consistent with this opinion. In light of this disposition, we need not address the petitioner's remaining arguments.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.