IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

**FILED**
**April 16, 2025**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 23-391

ARCH COAL, INC.,
Petitioner,

v.

JOBIE HOWARD,
Respondent.

Appeal from the Intermediate Court of Appeals
of West Virginia
Case No. 22-ICA-310

AFFIRMED

Submitted:  January 29, 2025
Filed:  April 16, 2025

T. Jonathan Cook, Esq.
Cipriani & Werner, PC
Charleston, West Virginia
Counsel for Petitioner

Edward Garfield Atkins, Esq.
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

WALKER, Justice:

Jobie Howard was severely injured while working as an electrician for Arch Coal, Inc.  In November 2022, the Workers' Compensation Board of Review determined that he met the whole person impairment threshold of 50% to be considered for a permanent total disability award under West Virginia Code § 23-4-6(n)(1) (2005).  The Board weighed the medical evidence, rejected some reports as unreliable, selected the impairment ratings from two physicians who practice in different fields of medicine and rated different body parts, and applied the Combined Values Chart from the American Medical Association, *Guides to the Evaluation of Permanent Impairment*, 322-24 (4th ed. 1993).  The Intermediate Court of Appeals affirmed, concluding that it was reasonable to combine the physicians' assessments to determine WPI.[1]  Arch Coal appeals, arguing that the ICA erred by concluding that the factfinder had authority to substitute its own calculation of WPI for that of a calculation performed by a physician.  For the reasons explained below, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 12, 2010, Jobie Howard suffered a career-ending injury due to an electrical explosion while working as an electrician for Arch Coal, Inc.  He was transferred from the scene by air ambulance to Cabell Huntington Hospital, located in Huntington, where he was hospitalized with multiple second and third-degree burns across his face,

---

[1] *Arch Coal, Inc. v. Howard*, No. 22-ICA-310, 2023 WL 3172051, at *4 (W. Va. Ct. App. May 1, 2023) (memorandum decision).

1

neck, arms, and back. Mr. Howard was placed on a ventilator and underwent multiple surgical procedures including skin grafts. While in the hospital, the trauma triggered a herpes simplex infection in his right eye, which contributed to his physical injury to that eye. He also has extensive symptomatic scarring, numbness and tingling in his left hand, and multiple range of motion abnormalities in his left arm and hand.

Mr. Howard received a total of 57% in permanent partial disability awards in this claim. He applied for a permanent total disability award in 2015. The issue on appeal is whether Mr. Howard meets the statutory threshold of 50% WPI to be considered for a PTD award under West Virginia Code § 23-4-6(n)(1).[2] We note that awards of PTD

---

[2] *See* W. Va. Code § 23-4-6(n)(1) ("Other than for those injuries specified in subdivision (m) of this section, in order to be eligible to apply for an award of permanent total disability benefits for all injuries incurred and all diseases, including occupational pneumoconiosis, regardless of the date of last exposure, on and after the effective date of the amendment and reenactment of this section during the year two thousand three, a claimant: (A) Must have been awarded the sum of fifty percent in prior permanent partial disability awards; (B) must have suffered a single occupational injury or disease which results in a finding by the commission that the claimant has suffered a medical impairment of fifty percent; or (C) has sustained a thirty-five percent statutory disability pursuant to the provisions of subdivision (f) of this section. Upon filing an application, the claim will be reevaluated by the examining board or other reviewing body pursuant to subdivision (i) of this section to determine if the claimant has suffered a whole body medical impairment of fifty percent or more resulting from either a single occupational injury or occupational disease or a combination of occupational injuries and occupational diseases or has sustained a thirty-five percent statutory disability pursuant to the provisions of subdivision (f) of this section. A claimant whose prior permanent partial disability awards total eighty-five percent or more shall also be examined by the board or other reviewing body and must be found to have suffered a whole body medical impairment of fifty percent in order for his or her request to be eligible for further review. The examining board or other reviewing body shall review the claim as provided for in subdivision (j) of this section. If the claimant has not suffered whole body medical impairment of at least fifty percent or has sustained a (continued . . .)

2

and PPD serve distinct purposes. As one court explained, PTD award payments "are wage replacement benefits meant to compensate the worker for the permanent loss of wage-earning capacity where the worker is unable to find work on the regular labor market."[3] On the other hand, the purpose of a PPD award "is to compensate a worker for the loss or impairment of a physical or mental function."[4]

In October 2020, the claim administrator denied Mr. Howard's application for PTD based on the recommendation of the PTD Review Board. Mr. Howard protested this order, and the matter proceeded to the Board of Review for factual development.

This case is medically complex for several reasons. First, Mr. Howard injured multiple areas of his body in the May 12, 2010, electrical explosion. He has visual impairment and ongoing symptoms related to the physical injury of his right eye caused by

thirty-five percent statutory disability pursuant to the provisions of subdivision (f) of this section, the request shall be denied. Upon a finding that the claimant has a fifty percent whole body medical impairment or has sustained a thirty-five percent statutory disability pursuant to the provisions of subdivision (f) of this section, the review of the application continues as provided for in the following paragraph of this subdivision. Those claimants whose prior permanent partial disability awards total eighty-five percent or more and who have been found to have a whole body medical impairment of at least fifty percent or have sustained a thirty-five percent statutory disability pursuant to the provisions of subdivision (f) of this section are entitled to the rebuttable presumption created pursuant to subdivision (d) of this section for the remaining issues in the request.").

[3] *Ihara v. State Dep't of Land & Nat. Res.*, 404 P.3d 302, 308 (Haw. 2017) (citation omitted).

[4] *Id.*

corneal scarring. The compensable injury also left him with significant orthopedic and dermatological impairment. But even before this compensable injury occurred, Mr. Howard had impairment to his left hand related to a 1998 noncompensable injury. And in 2004, Mr. Howard had bilateral refractive surgery (LASIK surgery for myopia) to correct his vision, which resulted in thinned corneas. So, examining physicians were tasked with rating different body parts[5] and apportioning[6] for preexisting conditions to assess WPI related to this claim.

In November 2022, the Board concluded that Mr. Howard met the WPI threshold of 50% to be considered for a PTD award.[7] When determining Mr. Howard's visual system impairment related to the compensable injury, the Board weighed the reports of three physicians, all board certified in the field of ophthalmology, who based their impairment recommendations on the *AMA Guides*. Mr. Howard submitted the medical

---

[5] *See Logan-Mingo Area Mental Health, Inc. v. Lester*, 250 W. Va. 219, __ n.1, 902 S.E.2d 768, 769 n.1 (2024) ("In using the phrase 'body parts,' we refer to separate areas of the body that have sustained distinct injuries for which separate impairment ratings have been assigned. *See, e.g.*, Am. Med. Ass'n, *Guides to the Evaluation of Permanent Impairment*, 610 (Robert D. Rondinelli, MD, PhD, et al. eds., 6th ed. 2008) (using the phrase 'body part' in explaining the Combined Values Chart).").

[6] *See In re Fournier*, 786 A.2d 854, 858 (N.H. 2001) ("'Apportionment' is a term of art in the [*AMA*] *Guides* which is defined as 'an estimate of the degree to which each of various occupational or nonoccupational factors may have caused or contributed to a particular impairment.' *Id.* at 315.").

[7] The Board remanded the claim to the claim administrator with instructions to refer the claim to the PTD Review Board.

4

records of Michael A. Krasnow, D.O., Ph.D., who opined 21% WPI, and Jitander S. Dudee, M.D., who opined 27% WPI. Arch Coal submitted the medical records of Ghassan Dagher, M.D., who opined 1% WPI. The Board discredited Dr. Dagher's finding as it was "not in accord with the other two physicians" and found it "unreliable for WPI determination." The Board determined that the reports of Drs. Krasnow and Dudee were of equal evidentiary weight and adopted Dr. Dudee's recommendation of 27% WPI because that report was more consistent with the claimant's position, applying West Virginia Code § 23-4-1g (2003).[8]

When determining Mr. Howard's orthopedic and dermatological impairment related to the compensable injury, the Board weighed the reports of several examining physicians who based their impairment recommendations on the *AMA Guides*. It found the reports of Prasadaro B. Mukkamala, M.D., Bruce A. Guberman, M.D., and Robert B. Walker, M.D., unreliable for WPI threshold purposes because they failed to apportion for

---

[8] *See* W. Va. Code § 23-4-1g(a) ("For all awards made on or after the effective date of the amendment and reenactment of this section during the year two thousand three, resolution of any issue raised in administering this chapter shall be based on a weighing of all evidence pertaining to the issue and a finding that a preponderance of the evidence supports the chosen manner of resolution. The process of weighing evidence shall include, but not be limited to, an assessment of the relevance, credibility, materiality and reliability that the evidence possesses in the context of the issue presented. Under no circumstances will an issue be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position. If, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted.").

Mr. Howard's 1998 noncompensable left-hand injury. Of the remaining two physician reports, the Board determined that the findings of David L. Soulsby, M.D., of 39% WPI and ChuanFang Jin, M.D., of 37% WPI were of equal evidentiary weight.[9] The Board adopted Dr. Soulsby's finding of 39% WPI, which it deemed to be the resolution most consistent with the claimant's position.[10]

When concluding that Mr. Howard exceeded the 50% WPI threshold, the Board selected Dr. Dudee's 27% WPI rating for the right eye and Dr. Soulsby's 39% WPI rating for orthopedic and dermatological injuries. The Board concluded that under the Combined Values Chart on page 322 of the *AMA Guides*,[11] these values rendered a total combined WPI of 55%.

Arch Coal appealed the Board's decision to the ICA, arguing that the Board cannot combine the impairment rating of different physicians to calculate WPI, because that is the exclusive province of an evaluating physician. But in its May 2023 decision, the

---

[9] Arch Coal submitted the reports of Drs. Soulsby and Jin.

[10] *See supra* note 8.

[11] *See Lester*, 250 W. Va. at __ n.4, 902 S.E.2d at 770 n.4 ("The Combined Values Chart is '[a] method used to combine 2 or more impairment percentages, derived from the formula A + B (1 − A) = Combined Values of A and B.' [AMA *Guides*] . . . This formula ensures that the total value of two or more impairments 'will not exceed 100% whole person impairment and takes into account the impact of impairment from one body part on impairment of another body part.' *Id.*").

ICA rejected Arch Coal's argument. The ICA found that the Board could combine the valid impairment ratings of two physicians to determine Mr. Howard's total WPI. The ICA reasoned that, "Dr. Soulsby is not an ophthalmologist and was not qualified to rate Mr. Howard's visual impairment. Similarly, Dr. Dundee [sic] specializes in ophthalmology and was not qualified to rate Mr. Howard's physical impairment."[12] The ICA stated that "[s]ince neither physician could rate the impairment to both the physical injury and visual injury, it was reasonable for the Board to combine the ratings of the two physicians to determine the total WPI."[13]

## II. STANDARD OF REVIEW

Arch Coal argues that the ICA erred by affirming the Board's decision which found that Mr. Howard met the statutory threshold of 50% WPI to be considered for a PTD award. This Court has held that:

> On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review

---

[12] *Arch Coal*, 2023 WL 3172051, at *4.

[13] *Id*.

7

are accorded deference unless the reviewing court believes the findings to be clearly wrong.[14]

Thus, unless the evidence compels a contrary finding, the Board's reliance on certain medical reports and opinions over others is entitled to considerable deference.[15]

## III. ANALYSIS

Arch Coal argues that the ICA erred in affirming the Board's conclusion that Mr. Howard had sufficient WPI to be considered for a PTD award, and contends that the Board's decision is contrary to law for two reasons. First, it argues that the Board cannot combine the impairment ratings of different physicians to create a "new impairment recommendation." Second, Arch Coal argues that the Board was obligated, "as a matter of law," to select Dr. Jin's WPI rating as her report was the only report deemed reliable that included impairment ratings for the orthopedic and dermatological injuries as well as the right eye injury. We reject both arguments because they are not supported by this Court's precedent or the record before us.[16]

---

[14] Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

[15] *See Hood v. Lincare Holdings, Inc.*, 249 W. Va. 108, 115, 894 S.E.2d 890, 897 (2023).

[16] Arch Coal also contends that the Board erred in relying on Dr. Dudee's visual impairment rating because it included impairment for a noncompensable body part, the left eye. Mr. Howard disagrees, but states that it does not matter because the result would be the same whether the Board used Dr. Krashow's report or Dr. Dudee's report because either (continued . . .)

Arch Coal first cites our memorandum decision in *Magnetech Industrial Services v. York*[17] for the proposition that the Board is not permitted to select impairment values from different physicians' reports and combine those into a new impairment rating not recommended by a physician. But as Mr. Howard correctly notes, the factual circumstances of this case and *Magnetech* are materially different. In *Magnetech*, the Administrative Law Judge with the Office of Judges was tasked with determining the claimant's entitlement to a PPD award for a left wrist injury after it partially discredited the three medical opinions presented as evidence in the claim proceedings.[18] When arriving at a 14% PPD determination, the ALJ "selected different portions from different reports to arrive at a PPD rating not found by any examiner."[19] The Board affirmed. This Court reversed on appeal, stating that the ALJ's decision was the result of erroneous conclusions of law. Because none of the physicians of record in *Magnetech* opined that the claimant sustained 14% PPD, the award was not based on any physician's impairment rating. And because the ALJ discredited portions of all three independent medical evaluation reports of record, it was not possible to enter an award based upon a reliable

---

of those values combined with Dr. Soulsby's report would exceed the statutory threshold of 50% WPI to be considered for a PTD award. We need not resolve this issue. Because the issue was not raised before the ICA, it is not properly before us.

[17] No. 14-0386, 2015 WL 249263 (W. Va. Jan. 15, 2015) (memorandum decision).

[18] *Id*. at *1.

[19] *Id*.

medical report of record. We reversed and remanded with directions to authorize an additional independent medical evaluation.[20]

*Magnetech* is readily distinguishable from the case before us because here, the Board did not pick and choose clinical findings from discredited reports to arrive at its own impairment rating. Rather, it considered valid impairment ratings from two physicians who evaluated different body parts, and then applied the Combined Values Chart of the *AMA Guides* when determining Mr. Howard's WPI. We agree with Mr. Howard that the Board had the discretion to perform this ministerial step to conclude that he had 55% WPI.[21]

---

[20] *Id*. at *3.

[21] In *Magnetech*, this Court stated that PPD awards "are to be made solely on the basis of a physician's impairment evaluation." *Id*. at *1 (citing *Repass v. Workers' Comp. Div.*, 212 W. Va. 86, 569 S.E.2d 162 (2002)). Arch Coal takes this to mean that a factfinder must base his WPI determination on a value plainly stated in a single physician's report. But *Repass* imposes no such restriction. As we recently explained in *Lester*, 250 W. Va. at __, 902 S.E.2d at 772:

> *Repass* discussed 1995 amendments to West Virginia Code §
> 23-4-6(i) and observed a change from the prior rule that
> distinguished "impairment," a medical question, from
> "disability," a legal question. Under the old rule, the Workers'
> Compensation Commissioner calculated a claimant's PPD
> award by considering a doctor's opinion on impairment and
> "evidence of the claimant's earning capacity, the effect of the
> impairment on the claimant's efficiency at work, and the effect
> of the impairment on the claimant's pursuit of normal everyday
> living." *Repass,* 212 W. Va. at 95, 569 S.E.2d at 171.
> However, after the 1995 amendments, the Code directed that
> "'the degree of permanent disability other than permanent total

(continued . . .)

10

Arch Coal next contends that the Board was obligated to select Dr. Jin's medical report because hers was the only reliable report that included impairment ratings for the orthopedic and dermatological injury, as well as the visual system injury. We can summarily dispense with this argument for the obvious reason that Dr. Jin did not rate Mr. Howard's visual impairment, as she was not qualified to do so. Dr. Jin is a physician who practices in the field of occupational medicine, not ophthalmology. When calculating WPI, Dr. Jin assessed Mr. Howard's orthopedic and dermatological impairment and then relied on Dr. Dagher's impairment rating of Mr. Howard's right eye before using the Combined Values Chart to opine that Mr. Howard had 38% WPI. Arch Coal overlooks the fact that the Board discredited Dr. Dagher's report as unreliable because his opinion was so divergent from the other two examining ophthalmologists. Because we see no reason to

disability shall be determined exclusively by the degree of whole body medical impairment that a claimant has suffered.'" W. Va. Code § 23-4-6(i). The *Repass* Court explained the significance of this amendment was that "the percentage of medical impairment now equals the percentage of permanent partial disability, and the Commissioner cannot take into consideration any other factors." *Repass*, 212 W. Va. at 95, 569 S.E.2d at 171 (quoting *Wagner v. Workers' Comp. Div.*, 205 W. Va. 186, 191-92, 517 S.E.2d 283, 288-89 (1998) (per curiam) (Starcher J., concurring)).

So, while *Repass* states that PPD awards are to be made based on a physician's impairment evaluation (as opposed to a disability rating), nothing in *Repass* prohibits a factfinder from considering valid impairment recommendations from different physicians who examined different body parts before utilizing the Combined Values Chart of the *AMA Guides* when determining a claimant's level of WPI. Here, the Board's finding of 55% WPI was based on two physicians' valid impairment ratings of different body parts, consistent with their respective areas of expertise.

11

disturb the Board's reliability determination, Dr. Jin's total WPI calculation is not dispositive on the issue because she used a discredited ophthalmology report.

We are more persuaded by Mr. Howard's argument that the Board's decision is supported by the facts and consistent with our memorandum decision in *Miller v. Dynamic Energy, Inc.*,[22] where this Court affirmed the Board's decision granting a 15% PPD award based on impairment ratings from two physicians who evaluated different body parts. In *Miller*, a physician opined that the claimant had 7% impairment to his right shoulder and a different physician opined that he had 9% impairment to the cervical and lumbar spine, which resulted in a total of 15% PPD under the *AMA Guides*.[23] We noted that the factfinder found both evaluations "were reliable assessments of the claimant's impairment, and that the "[*AMA*] *Guides*, and by extension the Combined Values Chart, have been adopted as the basis for calculating workers' compensation impairment in West Virginia."[24]

On the same grounds as *Miller*, we conclude that the Board did not err by calculating Mr. Howard's WPI at 55%. The Board analyzed a great deal of medical evidence in detail when selecting valid impairment recommendations from two physicians

---

[22] No. 20-0552, 2021 WL 5150063 (W. Va. Nov. 5, 2021) (memorandum decision).

[23] *Id*. at *2.

[24] *Id*.

who examined different body parts before it utilized the Combined Values Chart of the *AMA Guides*. The ICA did not err in giving deference to the Board's finding.

## IV. CONCLUSION

We affirm the May 1, 2023, decision of the Intermediate Court of Appeals of West Virginia.

Affirmed.